## In re Completion Bonds

BROWN, Deputy Attorney General, November 19, 1941.—For some time there has been discussion be-

tween your department and this department as to the right of a title insurance company to issue what are known as "completion bonds." Under recent date you have requested that we issue an opinion.

Some of the banking institutions under your jurisdiction which exercise the powers of a title insurance company have adopted the practice of issuing a bond to the owner of land who has contracted for the construction of improvements thereon, the obligation being to complete or to pay for the completion of a building in case the contractor fails to perform his undertaking entirely. The situation which this practice seeks to protect is that in recent years contractors have frequently become insolvent or bankrupt at the time a building is only partially completed, and the owner of the land is left with an incomplete structure upon his hands.

We feel that this undertaking in no way fulfills the purpose of a title insurance company. Section 685 of The Insurance Company Law of May 17, 1921, P. L. 682, as added by the Act of of July 1, 1937, P. L. 2540, 40 PS §895, provides as follows:

"Title insurance companies shall have the power to make insurance of every kind pertaining to or connected with *titles to real estate;* and to make, execute, and perfect such and so many contracts, agreements, policies, and other instruments as may be required therefor; such insurances to be made for the benefit of owners of real estate, mortgagees, and others interested in real estate, *from loss by reason of defective titles, liens, and encumbrances*" (Italics supplied.)

Section 686 of the same act, 40 PS §896, provides as follows:

"Every corporation which upon the effective date of this act shall lawfully possess, and which has within one year prior to such date exercised, the power to insure owners of real property, mortgagees, and others interested in real property, and others *from loss by reason of defective titles, liens, and encumbrances,*

shall, subject to the conditions herein prescribed, continue to possess such power." (Italics supplied.)

While the language above quoted is from The Insurance Company Law, the powers of a banking institution doing a title insurance business are expressed in practically similar language in section 1102 of the Banking Code of May 15, 1933, P. L. 624, PS §819-1102, which provides as follows:

"In addition to the general corporate powers granted by this act, and in addition to any powers specifically granted to a bank and trust company or a trust company elsewhere in this act, a bank and trust company or a trust company shall have the following powers, subject to the limitations and restrictions imposed by this act: . . .

"(5) In the case of certain existent bank and trust companies or trust companies, to insure owners, mortgagees, and others interested in real property *from loss by reason of defective titles, liens, and encumbrances.*"

It is clear from the above that the purpose of a title insurance company is to insure the owner of real estate, or a mortgagee, or others interested in real estate, from loss by reason of defective title, liens and encumbrances. The title to land improved by an incomplete building can be as free of defects, liens and encumbrances as can the title to real estate upon which a complete structure has been erected. In other words, the fact that the structure is or is not complete does not affect the title one way or another. It is true that a mechanic's lien arises out of the construction of a building but even there the situation is no different whether the building be complete or incomplete. A study of the above definitions clearly discloses that the purpose of title insurance companies is to prevent loss arising from title defects, liens or encumbrances, and not to insure against loss occasioned by the fact that a contractor has failed to complete his undertaking.

It also happens that certain casualty insurance companies are authorized to issue a bond which legally and adequately affords the holder thereof the full protection which a landowner needs in the circumstances. That is, a casualty insurance company may be incorporated, inter alia, for the following purpose (section 202(c)1 of The Insurance Company Law, supra, as amended by the Act of June 4, 1937, P. L. 1632, 40 PS §382) :

"Guaranteeing the fidelity of persons holding places of public or private trust; *guaranteeing the performance of contracts,* . . . ." (Italics supplied.)

The above clearly indicates to us that it is the intention of the legislature that a casualty insurance company and not a title insurance company should issue what are commonly termed performance bonds.

Of course, companies which function both as a bank and as a title insurance company are under your jurisdiction even though the title insurance feature is, as its name suggests, an insurance operation. In fact, your concern is that the assets of an institution which does this dual business are subject to great liability by reason of the issuance of insurance policies which provide for losses occasioned by the failure to complete buildings being erected upon land. It can readily be seen that such liability would exceed the total assets of the institution if at any one time such policies were issued in great number, or for very large amounts. Depositors' money is subjected to such liability because the institution operates as a unit and all its assets are subject to all its liabilities.

It is our opinion, therefore, and you are accordingly advised that:

The present law does not contemplate title insurance companies issuing performance bonds or contracts, and the institutions under your supervision which conduct a title insurance business should be notified to discontinue such activity.